IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *ex rel.* | : | |
| LAWANDA C. STRICKLAND, | : | CIVIL ACTION NO. |
| | : | |
| Plaintiff, | : | 1:10-CV-3138-RLV |
| | : | |
| v. | : | |
| | : | |
| YINKA T. OMOLE, | : | |
| | : | |
| Defendant. | : | |

**<u>UNITED STATES' COMPLAINT IN INTERVENTION</u>**

COMES NOW plaintiff United States of America, by and through its undersigned counsel, and files its Complaint in this action.

**<u>INTRODUCTION</u>**

1. On September 30, 2010, relator Lawanda Strickland ("relator") filed suit under the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730, in the U.S. District Court for the Northern District of Georgia. In her Complaint, filed on her behalf by attorney Martha Fineman-Sowers with the Atlanta Legal Aid Society, relator alleged defendant Yinka T. Omole submitted or caused to be submitted to the Atlanta Housing Authority ("AHA") false claims which were paid by the AHA with federal funds provided by the U.S. Department of Housing and Urban Development ("HUD").

2. On April 19, 2011, plaintiff United States of America filed its Notice of Intervention in this case against defendant

Yinka T. Omole pursuant to section 3730(b)(4) of the False Claims Act, 31 U.S.C. § 3730(b)(4).

3.  By Order dated April 20, 2011, the Court has directed that the United States file and serve its Complaint upon defendant Yinka T. Omole.

## JURISDICTION AND VENUE

4.  This action arises under the False Claims Act, as amended, 31 U.S.C. §§ 3729-3733, and at common law.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1345.

5.  This Court has personal jurisdiction over defendant Yinka T. Omole.

6.  Venue is proper in this district under 28 U.S.C. §§ 1391(b) and 1391(c), and under 31 U.S.C. § 3732(a).  Defendant Yinka T. Omole resides within the Northern District of Georgia, transacts business within the Northern District of Georgia, and the acts proscribed by the False Claims Act that are the subject of this civil action occurred within the Northern District of Georgia.

## THE PARTIES

7.  Plaintiffs are the United States of America (the "United States" or "Government") and relator Lawanda C. Strickland ("relator" or "Strickland").  The United States files this Complaint on behalf of the U.S. Department of Housing and Urban

Development, an agency of the United States.  At all times relevant to this Complaint, HUD has provided funding to the Atlanta Housing Authority to administer the Section 8 Existing Housing Certificate Program ("Section 8 Program").

8.   Relator Lawanda C. Strickland is a citizen of the United States and a former tenant of defendant Yinka T. Omole.

9.   Defendant Yinka T. Omole is a resident of Marietta, Cobb County, Georgia, and transacts business in Atlanta, Fulton County, Georgia.

## SECTION 8 PROGRAM BACKGROUND

10.  The Section 8 Program has been established "[f]or the purpose of aiding low-income families in obtaining a decent place to live and of promoting economically mixed housing...." 42 U.S.C. §1437f(a).

11.  Under the Section 8 Program, HUD pays federally funded rental subsidies to public housing agencies ("PHAs") which administer the Section 8 Program. 24 C.F.R. §982.1(a)(1).

12.  At all times relevant to this Complaint, the Atlanta Housing Authority ("AHA") has been a PHA and has administered the Section 8 Program in the City of Atlanta within the Northern District of Georgia.  At all times relevant to this Complaint, the funds used by the AHA to make Section 8 Program rental subsidy program payments have been derived from money HUD gave to the AHA.

13. Families that are eligible for participation in the Section 8 Program select and rent units that satisfy Section 8 Program housing quality standards. 24 C.F.R. §982.1(a)(2).

14. If the PHA approves a family's unit and tenancy, the PHA enters into a Housing Assistance Payments Contract ("HAPC") with the owner to make rental subsidy payments on behalf of the family. 24 C.F.R. §982.1(a)(2). The HAPC contains, among other things, several standardized certifications the landlord-owner must make in order to affirm eligibility to participate in the program.

15. The total rent charged for the property by the owner must be approved by the PHA. 24 C.F.R. §982.1(a)(2). That rent total is comprised of the rental subsidy that is paid by the PHA to the owner and the supplemental rent, if any, paid by the family to the owner, which is calculated by the PHA on the basis of the adjusted monthly income of the family. 24 C.F.R. §982.1(a)(4). The owner may not demand or accept any rent payment from the tenant in excess of this maximum, and must immediately return any excess rent payment to the tenant. 24 C.F.R. §982.451(b)(4)(ii).

**THE HAPC BETWEEN OMOLE AND THE AHA**

16. In July 2007 defendant Omole entered into discussions with the AHA to obtain Section 8 Program rental subsidy payments for residential property located at 889 Tift Avenue in Atlanta, Fulton County, Georgia ("the Tift Avenue property").

17.  Defendant Omole entered into those discussions with the AHA pursuant to defendant Omole's interest in renting the Tift Avenue property to relator Strickland.

18.  A HAPC thereafter was executed between defendant Omole and the AHA, dated on or about July 23, 2007, for the rental of the Tift Avenue property to relator Strickland ("the HAPC").

19.  Under the terms of the HAPC dated on or about July 23, 2007, nine hundred dollars ($900) per month was set by the AHA as the reasonable total rent for the Tift Avenue property.  That rental payment was to be paid, in full, through a monthly Section 8 program payment of $900 from the AHA to Omole.  Under the terms of the HAPC, no additional payments were to be made by relator Strickland or her family to defendant Omole.

20.  The HAPC between the AHA and Omole dated on or about July 23, 2007, stated that "during the HAP contract term, the rent to owner may at no time exceed the reasonable rent for the contract unit as most recently determined by the PHA in accordance with HUD requirements."[HAPC – ¶6.a.]

21.  Under the terms of the HAPC between the AHA and Omole dated on or about July 23, 2007, it was further stated "[u]nless the owner has complied with all provisions of the HAP contract, the owner does not have the right to receive housing assistance payments under the HAP contract." [HAPC – ¶7.b.].

22.  Under the terms of the HAPC dated on or about July 23, 2007, defendant Omole certified that "[e]xcept for the rent to owner, the owner has not received and will not receive any payments or other consideration (from the family, the PHA, HUD, or any other public or private source) for rental of the contract unit during the HAP contract term." [HAPC – ¶8.d.].

23.  During the period from on or about August 2, 2007, through on or about August 6, 2008, defendant Omole received fourteen (14) Section 8 housing assistance program payments totaling twelve thousand five hundred forty dollars ($12,540) from the AHA, pursuant to the terms of the HAPC between the AHA, for the rental of the Tift Avenue property by defendant Omole to relator Strickland, in the amounts described as follows:

| DATE | AHA SECTION 8 PAYMENT |
|------|----------------------|
| 8/2/2007 | $1,440.00 |
| 9/1/2007 | $900.00 |
| 10/1/2007 | $900.00 |
| 11/5/2007 | $900.00 |
| 12/3/2007 | $900.00 |
| 1/2/2008 | $900.00 |
| 2/1/2008 | $900.00 |
| 3/3/2008 | $900.00 |
| 4/2/2008 | $900.00 |

| 5/2/2008 | $900.00 |
| 6/2/2008 | $900.00 |
| 7/1/2008 | $900.00 |
| 8/1/2008 | $900.00 |
| 8/6/2008 | $300.00 |

The acceptance by defendant Omole of each Section 8 Program housing assistance program payment from the AHA constituted a separate affirmation of the accuracy of the terms and certifications of the HAPC between the AHA and defendant Omole for the Tift Avenue property rented by defendant Omole to relator Strickland.

24.  By Notice of Change effective September 1, 2008,  the AHA notified defendant Omole that, pursuant to defendant Omole's request for an increase in the monthly rental payment for the Tift Avenue property, the amount of the reasonable monthly rent would be increased from nine hundred dollars ($900) per month to one thousand fifty dollars ($1050) per month.  That reasonable monthly rent for the Tift Avenue property was to be paid, in full, through an increased monthly Section 8 Program payment of $1050 from the AHA to Omole, with no additional payments to be made by relator Strickland or her family to defendant Omole.  That Notice of Change, effective September 1, 2008, to defendant Omole stated that all other terms, covenants and other conditions of the HAPC for the

rental of the Tift Avenue property by defendant Omole to relator Strickland remained the same.

25. By Notice of Change effective July 1, 2009, the AHA notified defendant Omole that the amount of the reasonable monthly rent for the Tift Avenue property would remain set at one thousand fifty dollars ($1050). That reasonable monthly rent was to continue to be paid, in full, through an increased monthly Section 8 Program payment of $1050 from the AHA to Omole, with no additional payments to be made by relator Strickland or her family to defendant Omole. That Notice of Change, effective July 1, 2009, to defendant Omole stated that all other terms, covenants and other conditions of the HAPC for the rental of the Tift Avenue property by defendant Omole to relator Strickland remained the same.

26. During the period from on or about September 2, 2008, through on or about March 2, 2010, defendant Omole received nineteen (19) Section 8 housing assistance program payments totaling nineteen thousand nine hundred fifty dollars ($19,950) from the AHA, pursuant to the terms of the HAPC between the AHA and Notices of Change thereto, for the rental of the Tift Avenue property by defendant Omole to relator Strickland in the amounts described as follows:

| DATE | AHA SECTION 8 PAYMENT |
|------|----------------------|
| 9/2/2008 | $1,050.00 |

| | |
|---|---|
| 10/1/2008 | $1,050.00 |
| 11/3/2008 | $1,050.00 |
| 12/1/2008 | $1,050.00 |
| 1/2/2009 | $1,050.00 |
| 2/2/2009 | $1,050.00 |
| 3/4/2009 | $1,050.00 |
| 4/2/2009 | $1,050.00 |
| 5/4/2009 | $1,050.00 |
| 6/1/2009 | $1,050.00 |
| 7/1/2009 | $1,050.00 |
| 8/3/2009 | $1,050.00 |
| 9/3/2009 | $1,050.00 |
| 10/1/2009 | $1,050.00 |
| 11/3/2009 | $1,050.00 |
| 12/1/2009 | $1,050.00 |
| 1/4/2010 | $1,050.00 |
| 2/2/2010 | $1,050.00 |
| 3/2/2010 | $1,050.00 |

The acceptance by defendant Omole of each Section 8 Program housing assistance program payment from the AHA constituted a separate affirmation of the accuracy of the terms and certifications of the HAPC between the AHA and defendant Omole for the Tift Avenue property rented by defendant Omole to relator Strickland.

27. During the period from on or about April 1, 2010, through on or about October 1, 2010, defendant Omole received seven (7) Section 8 Program housing assistance program payments totaling seven thousand three hundred fifty dollars ($7350) from the AHA, pursuant to the terms of the HAPC with the AHA and Notices of Change thereto, for the rental of the Tift Avenue property by defendant Omole to relator Strickland in the amounts described as follows:

| DATE | AHA SECTION 8 PAYMENT |
|------|----------------------|
| 4/1/2010 | $1,050.00 |
| 5/3/2010 | $1,050.00 |
| 6/2/2010 | $1,050.00 |
| 7/2/2010 | $1,050.00 |
| 8/2/2010 | $1,050.00 |
| 9/1/2010 | $1,050.00 |
| 10/1/2010 | $1,050.00 |

The acceptance by defendant Omole of each Section 8 Program housing assistance program payment from the AHA constituted a separate affirmation of the accuracy of the terms and certifications of the HAPC between the AHA and defendant Omole for the Tift Avenue property rented by defendant Omole to relator Strickland.

## THE VIOLATIONS OF THE HAPC BY DEFENDANT OMOLE

28.  In addition to signing the HAPC with the AHA for the rental of the Tift Avenue property to relator Strickland, defendant Omole signed a separate Residential Lease Agreement with relator Strickland for the rental of the Tift Avenue property by defendant Omole to relator Strickland.  That Residential Lease Agreement, dated July 23, 2007, was not approved by the AHA or HUD.  Under the terms of that Residential Lease Agreement between defendant Omole and relator Strickland dated July 23, 2007, the monthly rental payment for the Tift Avenue property was set by defendant Omole at one thousand twelve hundred fifty  dollars ($1250) per month.

29.  In addition to signing the HAPC with the AHA and the Residential Lease Agreement with relator Strickland dated July 23, 2007, defendant Omole notified relator Strickland by letter dated June 23, 2008, that the monthly rental payment for the Tift Avenue property would increase, effective July 1, 2008, from one thousand twelve hundred fifty dollars ($1250) per month to one thousand four hundred dollars ($1400) per month. That increase in the monthly rental payment for the Tift Avenue property was not approved by the AHA or HUD.

30.  The reasonable monthly rental payment for the Tift Avenue property established by the AHA, pursuant to the terms of the HAPC between the AHA and defendant Omole, was initially set at nine

hundred dollars ($900) per month and increased, effective September 1, 2008, to one thousand fifty dollars ($1050) per month. The difference between those reasonable monthly rental payments, which were paid by the AHA through Section 8 Program rental subsidy payments pursuant to the terms of the HAPC, and the greater monthly rental payments for the Tift Avenue property set by defendant Omole was three hundred fifty dollars ($350). That additional $350 per month was paid by relator Strickland to defendant Omole as an unauthorized side payment.

31. During the period from on or about July 2007 through on or about March 2010, relator Strickland made thirty-three (33) side rental payments for the Tift Avenue property in the amount of three hundred fifty dollars ($350) each per month. Those side payments from relator Strickland to defendant Omole totaled eleven thousand five hundred fifty dollars ($11,550).

32. The side payments of three hundred fifty dollars ($350) per month received by defendant Omole from relator Strickland were in violation of defendant Omole's certification in the HAPC that, except for the Section 8 payments from the AHA, defendant Omole had not and would not receive any payments or other consideration from relator Strickland or any other source  for the rental of the Tift Avenue property during the HAP contract term.

33.   The side payments from relator Strickland to defendant Omole were not approved by the AHA or HUD.

34.   Section 8 Program payments made by the AHA to defendant Omole for the Tift Avenue property rented to relator Strickland were subject to the condition precedent that defendant Omole was not receiving side payments from relator Strickland or any other source during periods of time in which the AHA was making those Section 8 payments to defendant Omole for the Tift Avenue property.

35.   Under the terms of the HAPC between the AHA and defendant Omole for the rental of the Tift Avenue property by defendant Omole to relator Strickland, defendant Omole had no right to receive Section 8 Program rental subsidy payments from the AHA for any monthly rental period during which defendant Omole was receiving additional side rental payments for the Tift Avenue property which were made by or on behalf of relator Strickland.

36.   From July 2007 through March 2010, which were the periods of time during which defendant Omole was receiving unauthorized side rental payments made by or on behalf of relator Strickland for the Tift Avenue property, defendant Omole received Section 8 Program rental subsidy payments under the terms of his HAPC with the AHA for the Tift Avenue property in the total amount of thirty-two thousand four hundred ninety dollars ($32,490).

37.  During this period of time, the AHA would not have issued and would not have been authorized to issue the Section 8 Program rental subsidy payments to defendant Omole had the AHA known that defendant Omole was receiving those unauthorized side payments.

## **TERMINATION OF THE HAPC BETWEEN OMOLE AND THE AHA**

38.  After March 2010, relator Strickland ceased making side rental payments to defendant Omole for the Tift Avenue property.

39.  By letter dated March 25, 2010, defendant Omole notified relator Strickland, without the approval of the AHA, that the lease for the Tift Avenue property would not be renewed "for various circumstances."

40.  After relator Strickland ceased making side payments for the rental of the Tift Avenue property, defendant Omole continued to accept Section 8 Program rental subsidy payments in the amount of one thousand fifty dollars ($1050) per month from the AHA for the Tift Avenue property through October 2010.

41.  Defendant Omole filed a dispossessory action in the Magistrates Court of Fulton County, Georgia, on or about September 2, 2010, to evict relator Strickland from the Tift Avenue property.

42.  Relator Strickland filed a counterclaim to that dispossessory action seeking, among other damages, repayment of rental side payments collected by defendant Omole for the Tift Avenue property in violation of the HAPC.

43. By Order and Judgment filed October 14, 2010, the Magistrate's Court of Fulton County, Georgia, entered judgment in favor of relator Strickland and awarded relator Strickland damages including but not limited to the amount of side payments collected by defendant Omole for the Tift Avenue property in violation of the HAPC.

44. By e-mail transmitted to the AHA on or about October 18, 2010, defendant Omole stated:

> I am terminating the housing choice contract on this property immediately, and shall not accept any payment for the month of November 2010. It is regrettable that I have maintained this property under your program against some of your policies; this was a negligent omission of the dictates of my contract, and for which I may owe Ms. Strickland money.

45. The HAPC between the AHA and defendant Omole for the Tift Avenue property was terminated in November 2010.

**COUNT I**

False Claims Act, 31 U.S.C. § 3729(a)(1)(1986),
amended by 31 U.S.C. § 3729(a)(1)(A)(2009)

46. Plaintiff United States of America incorporates by reference the allegations made in Paragraphs 1 through 45 of this Complaint.

47.    Each Section 8 Program rental subsidy payment made by the AHA to defendant Omole pursuant to the terms of the HAPC between the AHA and defendant Omole for the rental of the Tift Avenue property by defendant Omole to relator Strickland constituted a request, demand or submission made to a recipient of money from HUD, specifically the AHA.

48.    Through the acts described above, defendant Omole knowingly presented, or caused to be presented, false or fraudulent claims for payment or approval to the United States under the Section 8 program  in violation of 31 U.S.C. § 3729(a)(1)(1986), as amended by 31 U.S.C. § 3729((a)(1)(A)(2009).

49.    The amounts of the false or fraudulent claims are listed in paragraphs 23 and 26 above.

50.    Due to the presentation of false or fraudulent claims, defendant Omole received Section 8 Program rental subsidy payments from the AHA, which were derived in their entirety from funds provided by HUD to the AHA, which he was not entitled to receive.

51.    By reason of defendant Omole's false or fraudulent claims, the United States suffered damages and therefore is entitled to treble damages under the False Claims Act, to be determined at trial, plus a civil penalty for each violation.

## COUNT II

**False Claims Act, 31 U.S.C. § 3729(a)(2)(1986),
amended by 31 U.S.C. § 3729(a)(1)(B)(2009)**

52. Plaintiff United States of America incorporates by reference the allegations made in Paragraphs 1 through 51 of this Complaint.

53. Defendant Omole knowingly made, used, or caused to be made or used, false records or statements material to false or fraudulent claims paid by the AHA under the Section 8 program in violation of 31 U.S.C. § 3729(a)(1)(B).

54. Due to the use by defendant Omole of false records or statements, defendant Omole received Section 8 rental subsidy payments from the AHA, which were derived in their entirety from funds provided by HUD to the AHA, which he was not entitled to receive.

55. By reason of defendant Omole's false records or statements, the United States suffered damages and therefore is entitled to treble damages under the False Claims Act, to be determined at trial, plus a civil penalty for each violation.

## COUNT III

### Unjust Enrichment

56.  Plaintiff United States of America incorporates by reference the allegations made in Paragraphs 1 through 55 of this Complaint.

57.  The AHA paid defendant Omole Section Program 8 rental subsidy payments, which were derived in their entirety from funds provided by HUD to the AHA, which defendant Omole was not entitled to receive and that were not properly payable.

58.  By causing the AHA to pay those Section 8 Program rental subsidy payments, and by the receipt of these dollars, defendant Omole was unjustly enriched to the detriment of the United States in an amount to be determined at trial.

### COUNT IV

### Payment by Mistake

59.  Plaintiff United States of America incorporates by reference the allegations made in Paragraphs 1 through 58 of this Complaint.

60.  The false claims that defendant Omole submitted or caused to be submitted were paid based on mistaken or erroneous understandings of material fact.

61.  The AHA, acting in reasonable reliance on the accuracy and truthfulness of the information contained in the claims, paid

defendant Omole Section 8 rental subsidy payments, which were derived in their entirety from funds provided by HUD to the AHA, to which he was not entitled.

## COUNT V

## Common Law Recoupment

62.  Plaintiff incorporates by reference the allegations made in Paragraphs 1 through 61 of this Complaint.

63.  The Section 8 Program rental subsidy payments made by the AHA to defendant Omole, which were derived in their entirety from funds provided by HUD to the AHA, as a result of the false claims which defendant Omole submitted or caused to be submitted, were payments unlawfully paid contrary to statute or regulation.

64.  The AHA paid Section 8 Program rental subsidy payments to defendant Omole, which were derived in their entirety from funds provided by HUD to the AHA. to which defendant omole was not entitled, and defendant Omole is thus liable under the common law of recoupment to account and return such amounts to the United States in an amount to be determined at trial.

## PRAYER FOR RELIEF

Wherefore, plaintiff United States of America demands judgement be entered in its favor and against defendant Yinka T. Omole as follows:

A.     On Counts I and II, for violations of the False Claims Act, in an amount equal to three times the amount of damages the United States has sustained as a result of defendant Omole's actions, as well as civil penalties as allowed by law, together with such further relief as may be just and proper.

B.     On Counts III, IV, and V, for unjust enrichment, payment by mistake, and common law recoupment, for the damages sustained, amounts by which defendant Omole was unjustly enriched, or amounts that Defendant retained illegally, plus interest, costs, and expenses, and such further relief as may be just and proper.

**JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, plaintiff United States hereby demands trial by jury.


Dated: September __1st__, 2011


                     Respectfully submitted,

                     SALLY QUILLIAN YATES
                     UNITED STATES ATTORNEY

                     */s/*_____
                     DANIEL A. CALDWELL
                     ASSISTANT U.S. ATTORNEY
                     Georgia Bar No. 102510

                     600 Richard B. Russell Federal Bldg.
                     75 Spring Street, S.W.
                     Atlanta, Georgia 30303

                     Telephone: (404) 581-6224
                     Facsimile: (404) 581-6181
                     Email: dan.caldwell@usdoj.gov

                     Counsel for plaintiff
                     United States of America

## CERTIFICATE OF SERVICE

This is to certify that I have this day electronically filed the within and foregoing United States' Complaint In Intervention using the CM/ECF system which will automatically send e-mail notification of such filing to the following attorneys of record:

Martha Fineman-Sowers, Esq.
Atlanta Legal Aid Society
151 Spring Street, S.W.
Atlanta GA 30303-3309

This is to further certify that a copy that a copy of the foregoing United States' Complaint In Intervention shall be served upon defendant Yinka Omole pursuant to the provisions of Rule 4 of the Federal Rules of Civil Procedure.

This ___1st___ day of September, 2011

/s/_____
DANIEL A. CALDWELL
ASSISTANT U.S. ATTORNEY